IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MATTCO INDUSTRIAL PRODUCTS, LLC, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § § | Civil Action No. 25-494 |
| LTA DISTRIBUTING, LLC, | § § § § | |
| *Defendants.* | § § | |

**MEMORANDUM OPINION AND ORDER**

Mattco Industrial Products, LLC ("Mattco") filed this patent infringement lawsuit, alleging that LTA Distributing, LLC ("LTA") has infringed U.S. Patent Nos. 10,785,988 ("the '988 patent"); 11,432,556 ("the '556 patent"); and 12,167,735 ("the '735 patent"). LTA has moved to dismiss Mattco's infringement claims. Dkt. No. 9. LTA does not challenge the sufficiency of Mattco's pleading of infringement. *See generally* Dkt. No. 10. Instead, LTA argues that Mattco has failed to state a claim because each asserted patent is invalid. For the reasons set forth below, the motion is denied.

**I.   Background**

The three asserted patents are generally directed to a device that allows for the removal and replacement of the "fingers" of poultry defeathering devices. '988 patent, col. 1, ll. 5–9. Claim 1 of the '988 patent recites in pertinent part:

> 1. A method of changing out a finger on a poultry defeathering apparatus comprising the steps of:
>
>> a. providing the poultry defeathering apparatus comprising:
>>
>>> a compression plate comprising: . . .
>>>
>>>> a central aperture operationally associated with a hub drive shaft of a feather plucking machine; . . .
>>>>
>>>>> wherein the compression plate is secured to the hub drive shaft by inserting the hub drive shaft through the central aperture;
>>>
>>> a finger plate operationally associated with the hub drive shaft and the compression plate, the finger plate comprising: . . .
>>>
>>>> a central aperture;
>>>>
>>>> an annular abutment ring secured to the front side of the finger plate and operationally associated with the central aperture;
>>>>
>>>> and a plurality of finger apertures surrounding the central aperture;
>>>
>>> a plurality of fingers comprising an oversized base and a body extending from the base; . . .
>>>
>>>> wherein the hub drive shaft is secured to the finger plate by passing through the central aperture and engaging the annular abutment ring . . .

Claim 1 of the '556 patent and claim 1 of the '735 recite similar limitations.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." The Third Circuit has instructed district courts to conduct a "two-part analysis" when evaluating a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court must separate the factual and legal elements of the claims. *Id*. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210–11. Second, the court "must then determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Discussion

#### A. Indefiniteness

LTA first argues that the asserted claims are invalid as indefinite because each claim states that there is a compression plate with a central aperture and a finger plate with a central aperture but then states that the hub drive shaft passes through "the central aperture" without identifying whether that central aperture is the compression plate aperture or the finger plate aperture. Dkt. No. 10 at 8.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Here, LTA has challenged the patent as indefinite at the motion to dismiss stage—i.e., before any claim construction proceedings have taken place. But "[i]ndefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determine whether allegedly indefinite language is subject to construction." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008). As such, indefiniteness is "inextricably intertwined with claim construction." *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). District courts have "repeatedly held that if a court is required to construe the meaning of claim terms . . . in order to resolve a motion to dismiss . . . the motion should be denied, because this type of analysis is inappropriate at the pleading stage." *Novartis Pharms. Corp. v. Actavis, Inc.*, No. CIV.A. 12-366, 2012 WL 6212619, at *7 (D. Del. Dec. 5, 2012) (collecting cases). As the court in *Novartis* explained, "it is unsuitable to engage in

such an inquiry at the pleading stage, because claim construction can be illuminated by the consideration of extrinsic evidence—evidence that is often not before the court at that stage[, and] claim construction analysis at the pleading stage does not benefit from the procedures (including an exchange of discovery documents relating to infringement, the exchange of proposed constructions and extensive briefing) that typically precede a Markman hearing." *Id.*

I agree with that analysis. It would be premature to address the indefiniteness argument without also engaging in claim construction, so I will deny the motion with respect to the indefiniteness argument. Of course, LTA is free to re-raise the issue during claim construction proceedings. *See Blackbird Tech v. Uber Techs., Inc.*, No. CV 19-561, 2020 WL 58535, at *8 (D. Del. Jan. 6, 2020) (denying motion to dismiss based on indefiniteness because the court could not resolve the claim construction issues on the record at that time); *see also Gebo Cermex USA, Inc. v. All. Indus. Corp.*, No. 6:18-CV-00080, 2019 WL 2330905, at *3–4 (W.D. Va. May 31, 2019); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16-cv-5298, 2017 WL 1362036, at *7, n.6 (N.D. Ill. Jan. 6, 2017); *Audio MPEG, Inc. HP Inc. v. Societa Italiana Per Lo Sviluppo Dell' Elettronica Spa*, No. 2:15-cv-00073, 2016 WL 7010947, at *8 (E.D. Va. July 1, 2016).

## B. Terminal Disclaimer

LTA next challenges the validity of the '735 patent based on defects in the terminal disclaimer filed during the prosecution of the application that issued as the '735 patent. Dkt. No. 10 at 8–9. LTA explains that in the course of the prosecution of that application, the examiner issued a rejection of the claims as invalid for obvious-type double patenting.[1] The applicant sought

---

[1] "Obviousness-type double patenting is a judicially created doctrine designed to prevent claims in separate applications or patents that do not recite the 'same' invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectively extend the life of patent protection [beyond the statutorily prescribed period. The doctrine] prohibits the issuance

4

to overcome that rejection by filing a terminal disclaimer.[2] *Id.* at 8. LTA argues that the first defect in the terminal disclaimer is that the disclaimer identifies the individual inventor as the applicant and owner of a 100 percent interest in the application, although that the inventor had assigned his rights to Mattco as of the date of the disclaimer. *Id.* at 8–9. LTA argues that the second defect is that the disclaimer lists the wrong application number for the application under prosecution. *Id.* at 9.

Mattco does not dispute that the terminal disclaimer contains the errors identified by LTA. Instead, Mattco responds that those defects can be corrected. Dkt. No. 12 at 11 (citing 37 C.F.R. § 1.321 (b)-(d) and Manual of Patent Examining Procedure ("MPEP") § 1490). Mattco also explains that procedural defects in terminal disclaimers are grounds for unenforceability only if there is a showing of inequitable conduct or if the defect cannot be remedied. *Id.* at 12. LTA argues that the defects cannot be corrected. Dkt. No. 13 at 6.

Mattco is correct that certain errors in a terminal disclaimer can be corrected even though the patent has already issued. *See* MPEP § 1490. In fact, the MPEP expressly contemplates correcting errors in which the wrong applicant was identified as the owner and in which the wrong patent or application was listed on the disclaimer. That section of the MPEP states:

> Where a terminal disclaimer was submitted to overcome a nonstatutory double patenting rejection (made during prosecution of an application which has now issued as a patent), and one or more patent or application numbers for the patent(s) or application(s) being disclaimed in the terminal disclaimer were in error, the patent owner may file a paper explaining the error(s) and requesting that the explanation be included in the file history and its request acknowledged. A patent

---

of claims in a second patent that are not patentably distinct from the claims of the first patent. A later patent claim is not patentably distinct from an earlier claim if the later claim is obvious over, or anticipated by, the earlier claim." *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (citations omitted).

[2] A patent applicant can file a "terminal disclaimer" in which the applicant disclaims part or all of the term of the patent to overcome an obvious-type double patenting rejection. *See In re: Cellect, LLC*, 81 F.4th 1216, 1228 (Fed. Cir. 2023); 35 U.S.C. § 253.

> owner may file additional terminal disclaimer(s) disclaiming the correct patent(s) or application(s) accompanied by the fee for such disclaimer(s) for processing by the Office. Similarly, if a terminal disclaimer has an error in the naming of the patent owner(s) or applicant, the patent owner may file a paper explaining the error(s) and requesting that the explanation be included in the file history. The patent owner can also request acknowledgement of the paper. A patent owner may also file additional terminal disclaimer(s) naming the correct owner(s) or applicant(s), accompanied by the fee for such disclaimer(s), for processing by the Office.

*Id.* § 1490(VIII)(B) (citation omitted). Therefore, I agree with Mattco that it can correct the errors in the terminal disclaimer.

LTA's authority does not counsel otherwise. In *SIPCO, LLC v. Jasco Products Co.*, a patent applicant filed a terminal disclaimer seeking to overcome a double patenting rejection. 736 F. Supp. 3d 1109, 1111 (W.D. Okla. 2024). That terminal disclaimer stated that the patent would be enforceable only during the time period in which the patent and the reference were commonly owned. *Id.* The problem with the disclaimer in *SIPCO* was that the patent applicant did not own the reference, nor did it subsequently own the reference during the life of the patent. *Id.* That problem arose because the rejection from the examiner contained a transcription error and identified the wrong prior art patent number as the basis for the rejection. *Id.* After the patent issued, the patentee realized the error and sought to withdraw the terminal disclaimer, but the Patent and Trademark Office denied that request. *Id.* at 1112. The court dismissed the claims of infringement, explaining that the public was entitled to rely on the statement in the disclaimer that the patent would be enforceable only during the period that it was commonly owned with the reference. *Id.* at 1113. Because the patent and reference were never commonly owned, the court concluded that the patent was never enforceable. *Id.* at 1114.

Here, the terminal disclaimer at issue identifies the correct reference but lists the wrong application number. Dkt. No. 10, Exh. 3. It also reads, "any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are

commonly owned." *Id.* Under the logic of *SIPCO*, the terminal disclaimer may have implications for the patent that issued from the application as listed on the disclaimer given the representations in the disclaimer. But given that the wrong application number is listed as opposed to the wrong prior art reference, as was the case in *SIPCO*, this case is not governed by *SIPCO*. Instead, I defer to the section of the MPEP that addresses how to fix a situation in which the wrong application number is listed on the terminal disclaimer—i.e., the situation here. Accordingly, Mattco can presumably file papers addressing its mistakes and can file an additional terminal disclaimer containing the correct application number and applicant name.

      Citing *SIPCO*, LTA also argues that the '735 patent is not currently enforceable given the errors in the terminal disclaimer. Dkt. No. 13 at 6. I disagree. Given the defects in the terminal disclaimer, it is possible that the '735 patent is currently invalid as obvious in view of the prior art patent identified in the terminal disclaimer (in which case LTA would not be liable for any infringement). LTA, however, has not asked me to dismiss the claims as obvious over the listed prior art patent. Instead, LTA has asked me to hold the patent facially unenforceable as the court in *SIPCO* did. As explained above, however, the facts here are unlike the facts in *SIPCO*. Moreover, the Federal Circuit has explained that a patent holder can file a terminal disclaimer even after the patent has issued to "supplant a finding of invalidity for double patenting" or to "overcome prospectively the double patenting basis for invalidity." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005). Accordingly, unlike in *SIPCO* where the patent holder could neither withdraw the erroneous terminal disclaimer nor correct the error by filing a new terminal disclaimer, Mattco can correct the errors by filing a new terminal disclaimer.

      That said, the question remains whether such a terminal disclaimer would have retroactive effect remains. *See id.* (making "no determination about the retrospective effect" of a post-

issuance terminal disclaimer). To be sure, given the guidance from the Federal Circuit regarding certificates of correction, it would seem that the disclaimer would not be retroactive. *See Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1295–96 (Fed. Cir. 2000). At this point, however, it is unnecessary to resolve whether a terminal disclaimer filed after litigation is initiated may be given retroactive effect. That issue can be addressed after Mattco files a supplemental terminal disclaimer, should it decide to do so.

### C. Priority Claim

Finally, LTA argues that the '735 patent is invalid because the patent states that it is a divisional of both patent application number 16/859,268 and patent application number 16/389,047, even though a patent can be a divisional of only one application. Dkt. No. 10 at 9. LTA, however, cites no authority in support of its assertion that a patent that claims to be a divisional of two separate applications is invalid *per se*.

Mattco acknowledges that the face of the patent states that the patent is a divisional of two applications. Mattco points out, however, that in the specification the patent is correctly identified as a divisional of patent application number 16/859,268, which is itself a divisional of patent application number 16/389,047. Dkt. No. 12 at 14. Therefore, Mattco argues that the chain of priority is clear and correct as stated in the specification. *Id.* at 14. At worst, Mattco argues, the statement that the patent is a divisional of two other applications is a scrivener's error that the Patent and Trademark Office can correct. *Id.* at 15.

In its reply, LTA cites *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309 (Fed. Cir. 2018). In *Droplets*, the Federal Circuit explained that it is the patent applicant's burden to correctly identify and state the application's priority claim. *Id.* at 1317. The court found that the applicant had failed to do so, and as a result the patent was not entitled to an earlier priority date. *Id.* at 1318.

Similarly, in *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359 (Fed. Cir. 2014), the Federal Circuit affirmed a decision finding that the claims were not entitled to an earlier priority date as a result of the applicant's failure to include a full priority claim. *Id.* at 1367. But in neither case did the court find the claims invalid based on the applicant's failure to properly state the priority claim. Rather, the court held that the claims were invalidated by references that would not have been prior art if the applicant had properly stated the priority claim.

Based on *Droplets* and *Medtronic*, LTA is free to challenge the priority date to which the '735 patent is entitled in view of the error, and such a challenge may affect which references are deemed prior art.[3] But LTA has failed to identify any authority suggesting that a patent can be held invalid based solely on the fact that it incorrectly states a priority claim, and I am unaware of any such authority. Accordingly, I will deny LTA's request to find the claims of the '735 patent invalid on the ground that the priority claim on the face of the patent is incorrect.

IT IS SO ORDERED.

SIGNED this 22nd day of August, 2025.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

---

[3] In a footnote, LTA appears to challenge whether the '735 patent could have been a divisional application at all. Dkt. No. 13 at 9 n.4. The basis for that challenge is not clear to me, but in any event that issue can be raised along with any other challenges to the priority date that LTA might wish to raise later in this litigation.