**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MATTCO INDUSTRIAL PRODUCTS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 25-494 |
| | § | |
| LTA DISTRIBUTING LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

# <u>MEMORANDUM OPINION AND ORDER</u>

In this patent infringement case, plaintiff Mattco Industrial Products, LLC, has moved to dismiss with prejudice its complaint against defendant LTA Distributing LLC. D.I. 68, 69. LTA has opposed the motion, D.I. 72, and Mattco has filed a reply, D.I. 73. For the reasons set forth below, Mattco's motion is granted.

## I. Background

On April 23, 2025, Mattco filed a complaint accusing LTA of infringing U.S. Patent Nos. 10,785,988 ("the '988 patent"), 11,432,556 ("the '556 patent"), and 12,167,735 ("the '735 patent"). *See* D.I. 1 at 3. The patents are titled Poultry Defeathering Apparatus and are directed to either a defeathering apparatus with a compression plate, a finger plate, rubber fingers, and a hub drive shaft or a method for changing out a finger plate on such an apparatus. D.I. 1 at 2–3; *see also* '988 patent at Abstract. LTA "offers for sale and/or sells a replacement 'cap' for use with existing hubs" on defeathering machines. D.I. 25 at 19.

LTA filed an answer that raised fourteen affirmative defenses and nine declaratory judgment counterclaims for noninfringement, invalidity, and unenforceability. *See* D.I. 25 at 7–

27. The answer also asked the court to declare the case exceptional under 35 U.S.C. § 285. *See id.* at 28. Claim construction has been completed, *see* D.I. 67, and fact discovery closed on August 1, 2026, *see* D.I. 30 at 3.

On September 24, 2026, Mattco executed a unilateral "Patent License and Covenant Not to Sue." *See* D.I. 69-1. Following the execution of the covenant not to sue, Mattco moved to dismiss its claims with prejudice under Federal Rule of Civil Procedure 41(a)(2) and to dismiss LTA's counterclaims without prejudice for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). D.I. 68, 69. LTA opposes dismissal. D.I. 72. For the reasons discussed below, I agree with Mattco that dismissing Mattco's claims with prejudice will not adversely affect LTA and that the effect of the dismissal will be to deprive the court of subject matter jurisdiction over LTA's counterclaims.

## II. Legal Standard

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The Third Circuit has set a liberal policy in favor of voluntary dismissals. In *In re Paoli R.R. Yard PCB Litigation*, the Third Circuit stated that "Rule 41 motions should be allowed unless [a] defendant will suffer some prejudice other than the mere prospect of a second lawsuit." 916 F.2d 829, 863 (3d Cir. 1990) (citation and quotation marks omitted). If the non-movant were to suffer legal prejudice as the result of the dismissal, a dismissal with prejudice may be warranted. *See Mobil Oil Corp. v. Adv. Envtl. Recycling Tech., Inc.*, 203 F.R.D. 156, 158 (D. Del. 2001). When determining if a party will suffer legal prejudice, "a court should consider [(1)] 'any excessive and duplicative expense of a second litigation; [(2)] the effort and expense incurred by a defendant in preparing for trial; [(3)] the extent to which the pending litigation has progressed; and [(4)] the claimant's

diligence in moving to dismiss.'" *Reach & Assocs., P.C. v. Dencer*, No. 02-1355, 2004 WL 253487, at *1 (D. Del. Feb. 9, 2004) (quoting *Spring City Corp. v. Am. Bldgs. Co.*, No. 97-8127, 1999 WL 1212201, at *1 (E.D. Pa. Dec. 17, 1999)). Ultimately, the decision to order a dismissal pursuant to Rule 41 is within a district court's discretionary power. *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974).

Rule 12(b)(1) permits a party to assert by motion the defense of "lack of subject-matter jurisdiction." A court lacks subject matter jurisdiction if the parties' controversy has become moot. *Goodmann v. People's Bank*, 209 F. App'x 111, 113 (3d Cir. 2006). Mootness doctrine is rooted in Article III, Section 2, of the United States Constitution, which limits the judicial power of federal courts to ongoing "Cases" or "Controversies." *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30–31 (3d Cir. 1985) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)); *see also Lewis v. Continental Bank, Corp.*, 494 U.S. 472, 477–78 (1990). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings." *Lewis*, 494 U.S. at 477. "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation and quotation marks omitted).

Declaratory judgment claims require "a case of actual controversy" justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). An actual controversy is determined by whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In *Already, LLC v. Nike, Inc.*, the Supreme

Court clarified the appropriate analysis for when parties dispute the impact of a covenant not to sue on declaratory judgement counterclaims. 568 U.S. at 93–95. First, the party offering the covenant must meet its burden under the voluntary cessation doctrine by demonstrating that "it 'could not reasonably be expected' to resume its enforcement efforts." *Id.* at 92 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). If the party offering the covenant is successful, it is "incumbent on [the party asserting counterclaims] to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Id.* at 94. "The case is moot if the court, considering the covenant's language and the [counterclaimant]'s anticipated future activities, is satisfied that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur." *Id.* at 94–95.

## III. Discussion

Mattco first contends that dismissal of its infringement claims under Rule 41(a)(2) is warranted because LTA will suffer no prejudice: (1) there is no risk of a second litigation involving the same claims, because Mattco is dismissing its claims with prejudice; (2) the deadlines for expert discovery, dispositive motions, and pretrial submissions have not passed, and the case is not on the eve of trial; and (3) Mattco did not delay in seeking dismissal once the parties' settlement negotiations had failed and after Mattco had executed the unilateral covenant not to sue. D.I. 69 at 3. Mattco next argues that the court lacks subject matter jurisdiction over LTA's counterclaims in view of the covenant not to sue, because there is no longer a case or controversy between the parties. *Id.* at 4. As to LTA's declaratory judgment claims for noninfringement, Mattco contends that its covenant deprives the court of subject matter jurisdiction because LTA's noninfringement counterclaims are premised on Mattco's assertion that LTA's products infringe the now licensed patents, extinguishing any controversy. *Id.* at 5. As to LTA's declaratory

judgment claims for invalidity, Mattco contends that its covenant deprives the court of subject matter jurisdiction because the covenant, which is irrevocable and perpetual, extends to LTA's existing and future products, eliminating any reasonable apprehension that LTA will face an infringement action based on the licensed patents in the future. *Id.* at 6–7. As to LTA's declaratory judgment claims for unenforceability, Mattco contends that its covenant deprives the court of subject matter jurisdiction because the counterclaims arise solely from Mattco's assertion of the licensed patents against LTA, but the covenant eliminates any reasonable threat of ongoing patent enforcement against LTA. *Id.* at 7–8. Mattco further contends that, even if a technical Article III controversy still existed, the court has the discretion to decline jurisdiction over declaratory judgment claims, which would be appropriate here because the covenant not to sue eliminates any practical need for declaratory relief. *Id.* at 8–9.

LTA responds that Mattco's ability to dismiss its own claims is limited by LTA's counterclaims and that Mattco's prejudice analysis fails to take into account that LTA has already brought forth substantial invalidating prior art, has obtained testimony impacting noninfringement and invalidity, and has incurred substantial fees and costs in this litigation. D.I. 72 at 6–7. LTA also contends that Mattco did not act with diligence in bringing its motion to dismiss, because a patentee cannot unilaterally exit a litigation to avoid a ruling on its patents' validity, enforceability, and its own litigation conduct after failing to obtain a settlement agreement on its preferred terms. *Id.* at 7. LTA also contends that the only "proper" terms for dismissal under Rule 41(a)(2) here are that (1) Mattco's claims be dismissed with prejudice, (2) LTA be awarded prevailing party status, and (3) the court retain jurisdiction over any fees motion under 35 U.S.C. § 285. *Id.* at 8. LTA next responds that, under the Supreme Court's decision in *Already*, Mattco has failed to show that the covenant not to sue moots the entire controversy between the parties because the covenant

does not include redesign and successor products, because it reserves claims against product combinations that could reach LTA's customers, and because it is conditional. *Id.* at 9–12. LTA further argues that Mattco's motion mischaracterizes the actual terms of the covenant. *Id.* at 12–13. LTA also argues that its unenforceability counterclaims are not resolved by the covenant, and thus a case or controversy still exists, because the covenant leaves Mattco free to assert these same patents against a redesigned product, any combination incorporating LTA's caps and finger plates, and LTA's customers who fall outside the covenant's protection. *Id.* at 13–14. LTA further contends that its counterclaims allege that Mattco is using its patents to impermissibly broaden the scope of the patent grant with anticompetitive effect, of which the covenant is further evidence. *Id.* at 14–15. LTA also responds that there could be no reason for the court to discretionarily decline jurisdiction. *Id.* at 17–18.

Mattco replies that LTA cannot demonstrate prejudice sufficient to prevent the dismissal of its counterclaims, because Mattco seeks dismissal of its infringement claims with prejudice and has provided LTA with a perpetual, irrevocable license and covenant not to sue covering all past, present, and future poultry defeathering methods, apparatuses, and parts designed, manufactured, used, or sold by LTA, meaning that LTA faces no risk of future infringement litigation concerning the patents asserted in this case. D.I. 73 at 2. Mattco also replies that it does not dispute that the court may retain jurisdiction to consider a subsequently filed fee application. *Id.* at 3.

As to LTA's counterclaims, Mattco replies that it met its burden under the *Already* case, as the covenant not to sue is "exceptionally broad," reaching not only existing products and methods, but also future poultry defeathering methods, apparatuses, and parts that LTA designs, manufactures, uses, or sells. *Id.* at 3–4 (citing 568 U.S. at 92). Mattco further replies that LTA has failed to identify any existing product, method, apparatus, or part that falls outside the

covenant's scope. *Id.* at 4. And as to LTA's arguments about its customers, Mattco replies that under *MedImmune*, declaratory-judgment jurisdiction exists only where there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality," 549 U.S. at 127, and that LTA identifies no existing or planned combination of products, apparatuses, or methods that falls outside the covenant's scope. *Id.* at 4–5. Instead, Mattco contends that LTA is asking the court to speculate about hypothetical future combinations that may or may not ever exist and to retain jurisdiction based on conjectural future disputes, which Article III does not permit. *Id.* at 5. Mattco further notes that the covenant protects LTA's "current and future customers, distributors, resellers, suppliers, manufacturers, and end users" with respect to their "using" and "receiving" of LTA's products and methods. *Id.* (citing D.I. 69-1 at 1–2). Under the covenant, Mattco also "represents, and agrees to be bound [by], that it will not assert the Asserted Patents against any person based on the installation, use, or operation of a product supplied by or for LTA in any poultry defeathering apparatus, regardless of the source of the apparatus's other components." *Id.* at 6. Mattco also contends that the covenant is not conditional, as LTA cannot be divested of its protection from assertion of the licensed patents, and further "represents, and agrees to be bound [by], that it will not invoke the exclusion against LTA, its affiliates, or customers." *Id.* at 7.

As to LTA's arguments regarding its inequitable conduct counterclaim (and the associated remedy of patent unenforceability), Mattco replies that courts in this district have held that a sufficiently broad covenant not to sue deprives the court of subject matter jurisdiction over declaratory judgment claims seeking declarations of unenforceability where it is clear that the alleged conduct is not reasonably expected to recur, which is true here. *Id.* at 8 (citing *Evonik Degussa GmbH v. Materia Inc.*, No. 09-636, 2016 WL 1367735, at *1–3 (D. Del. Apr. 6, 2016)).

And, to the extent that LTA contends its enforceability allegations bear on a future fee application, Mattco argues that is a question for a properly filed section 285 motion, which Mattco does not dispute the court may entertain. *Id.* Finally, Mattco contends that LTA cannot manufacture jurisdiction by alleging there are ambiguities in the covenant when LTA had the opportunity to review, comment upon, and revise the covenant. *Id.* at 9.

As Mattco requests, the claims in Mattco's complaint will be dismissed with prejudice. Dismissal with prejudice (in addition to the license and covenant not to sue) precludes any potential legal prejudice to LTA with regard to Mattco's claims. *See Bioverativ Inc. v. CSL Behring LLC*, No. 17-914, 2021 WL 3471688, at *1–3 (D. Del. Aug. 6, 2021); *Reach*, 2004 WL 253487, at *1–2. There is no potential for a second litigation based on these claims. And while the case has progressed past fact discovery, neither expert discovery nor dispositive motions briefing has passed, and this case is not on the eve of trial. Mattco also moved to dismiss shortly after executing the convent not to sue. As for LTA's concern that it has already expended substantial costs to litigate this case through fact discovery, the court will retain jurisdiction over any fees motion LTA wishes to make under section 285.[1] *See Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*, No. 96-101, 1997 WL 811563, at *7 (D. Del. Dec. 23, 1997) ("Dismissal of [a] declaratory judgment action and [a] counterclaim does not eliminate this court's jurisdiction to preside over a motion for attorneys' fees and costs."). Given these facts, I find there is no prejudice to LTA, and I will therefore dismiss Mattco's claims with prejudice under Rule 41(a)(2).[2]

---

[1] I will reserve making any findings pertaining to any attorney fee motion that LTA may file, including the issue of prevailing party status, until and unless such motion is filed, briefed, and properly presented to the court.

[2] I further note that finding prejudice to the non-movant based on dismissal under Rule 41(a)(2) would usually implicate dismissing the claims with prejudice instead of without prejudice, a request Mattco has already made. *See Bioverativ*, 2021 WL 3471688, at *2; *Mobil Oil*, 203 F.R.D. at 158.

Turning to LTA's counterclaims for declaratory judgment, *Already* is instructive. The covenant not to sue in *Already* laid out that:

> [Nike] unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s) . . . against Already or any of its . . . related business entities . . . [including] distributors . . . and employees of such entities and all customers . . . on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law . . . relating to the NIKE Mark based on the appearance of any of Already's current and/or previous footwear product designs, and any colorable imitations thereof, regardless of whether that footwear is produced . . . or otherwise used in commerce before or after the Effective Date of this Covenant.

568 U.S. at 93 (alterations and omissions in original) (emphases removed) (citation omitted). The Court explained that "[t]he breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test," as "[t]he covenant is unconditional and irrevocable," it "prohibits Nike from making any claim or any demand" against Already, it "reaches beyond Already to protect Already's distributors and customers," and it "covers not just current or previous designs, but any colorable imitations." *Id.* (emphasis removed). Accordingly, "it was incumbent on Already to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Id.* at 94. But when given the opportunity, Already submitted only an affidavit "saying little more than that Already currently has plans to introduce new shoe lines and make modifications to existing shoe lines" without "stat[ing] that these shoes would arguably infringe Nike's trademark yet fall outside the scope of the covenant." *Id.* at 95. "Given the covenant's broad language, and given that Already . . . asserted no concrete plans to engage in conduct not covered by the covenant, [the Court] conclude[d] the case [wa]s moot because the challenged conduct [could not] reasonably be expected to recur." *Id.*

I find the license and covenant not to sue at issue in this case to be similarly broad. As Mattco represents, the covenant (1) covers "all past, current, and future poultry defeathering methods, apparatuses, and parts therefor that are designed, manufactured by or for, used or sold

by [LTA] including, but not limited to, those covered by any claim of the Asserted Patents, those identified in the Complaint, identified in [Mattco]'s infringement contentions in the Litigation, and the like," D.I. 73 at 4; D.I. 69-1 at 1; (2) covers "LTA, its parents, subsidiaries, and affiliates, as well as its current and future customers, distributors, resellers, suppliers, manufacturers, and end users," D.I. 73 at 4; D.I. 69-1 at 1; (3) "expressly protects LTA's 'current and future customers, distributors, resellers, suppliers, manufacturers, and end users' with respect to their 'using' and 'receiving' of [LTA]'s Products and Methods (D.I. 69-1 at [1]), and it expressly covers the 'installation, operation, support, and maintenance' of those products (*Id.* at [2])," D.I. 73 at 5; and (4) "provides unconditional protection to LTA with respect to the Asserted Patents," D.I. 73 at 7; D.I. 69-1 at 1–2. "To remove any doubt," Mattco further "represent[ed], and agree[d] to be bound [by]," both (1) "that it will not assert the Asserted Patents against any person based on the installation, use, or operation of a product supplied by or for LTA in any poultry defeathering apparatus, regardless of the source of the apparatus's other components," and (2) "that it will not invoke the exclusion against LTA, its affiliates, or customers." D.I. 73 at 6–7. While LTA may take issue with some of the statements made by Mattco about the scope of the covenant in Mattco's motion briefing because LTA disagrees with Mattco's interpretation of the covenant's language, Mattco having taken such positions in this court "would be hard pressed to assert [any] contrary [representations] down the road." *Already*, 568 U.S. at 94; *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (cleaned up) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895))).

Accordingly, "it was incumbent on [LTA] to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant" in order to support jurisdiction for the continued litigation of its declaratory judgment counterclaims. *Already*, 568 U.S. at 94. But LTA has not pointed to any specific conduct that would fall outside to covenant and subject it to future litigation by Mattco. At most, LTA asks the court to speculate about future products and future disputes that may not even involve LTA itself.[3] This is not enough to support Article III jurisdiction. *See MedImmune*, 549 U.S. at 127 ("[T]he question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." (emphasis added) (citation omitted)); *see also Bioverativ*, 2021 WL 3471688, at *3–5. As for LTA's unenforceability arguments, the covenant, as I have interpreted it above, prevents Mattco from enforcing these patents against LTA, removing any non-speculative controversy between these parties on this issue.[4] *See Evonik*, 2016 WL 1367735, at *1–3. As no case or controversy survives, the court has no Article III standing to consider LTA's counterclaims. LTA's counterclaims will thus be dismissed without prejudice.

---

[3] LTA points to one customer to which it "currently sells replacement caps and finger plates, . . . for installation on existing hubs," in order to argue that it engages in activities not covered by the covenant, *see* D.I. 72 at 13, but the covenant here "expressly protects LTA's 'current and future customers, distributors, resellers, suppliers, manufacturers, and end users' with respect to their 'using' and 'receiving' of [LTA]'s Products and Methods . . . , and it expressly covers the 'installation, operation, support, and maintenance' of those products . . . ," D.I. 73 at 5 (quoting D.I. 69-1 at 1–2). Accordingly, LTA has not shown this activity between it and its customer is not covered by the covenant and thus does not satisfy LTA's burden under *Already* to sustain jurisdiction over the counterclaims.

[4] As noted above, the court will retain jurisdiction over any fees motion LTA seeks to file, *see Matsushita Battery Indus.*, 1997 WL 811563, at *7, and can consider such arguments as part of the section 285 analysis, *cf. Evonik*, 2016 WL 1367735, at *3 ("It does not follow, however, that all the evidence that would have been offered to prove the inequitable conduct claim is therefore inadmissible evidence regarding the matters left to be [resolved].").

## IV. Conclusion

Mattco's motion to dismiss is granted. Mattco's claims are dismissed with prejudice and LTA's counterclaims are dismissed without prejudice. The court will retain jurisdiction over any fee application. A party seeking fees shall file the appropriate motion within fourteen days of the date this order.

IT IS SO ORDERED.

SIGNED this 13th day of November, 2026.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE